UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

COREY ALBERT SPARKS,  Case No. 13-62405
  Chapter 13 Proceeding
Debtor.  Hon. Walter Shapero

_____/

**OPINION REGARDING DEBTOR'S OBJECTION TO
PROOF OF CLAIM OF CREDITOR ROBERT VANDERWOUDE**

BACKGROUND FACTS AND PROCEDURAL HISTORY

On January 25, 2008, Corey Sparks ("Debtor") executed a balloon note and a mortgage in the amount of $16,000.00 in favor of Royal American Mortgage, Inc. ("Royal") on real property located at 17594 Coral Gables, Lathrup Village, Michigan 48076. The balloon note called for monthly payments of $241.14 beginning on March 1, 2008, with a maturity date of February 1, 2013. On January 30, 2008, Royal, by separate instruments, executed an assignment of the mortgage and a Notice of Assignment, Sale or Transfer of Servicing Rights, assigning the mortgage and servicing rights to Mahalak Enterprises, LLC ("Mahalak Enterprises"). The mortgage and assignments were recorded on March 31, 2008. Jonathan Mahalak was a principal of Royal and Donald Warren was its vice-president.

On February 2, 2008, Mahalak Enterprises, by Jonathan Mahalak, its "principal," executed an assignment to Jonathan Mahalak, an individual, which was recorded on April 24, 2008. There is no evidence of any endorsement of the Note paralleling the indicated or any later assignment of the mortgage. On April 7, 2008, the Debtor made his March 1, 2008 payment in the amount of $241.14 to Jonathan Mahalak. On May 12, 2008, Jonathan Mahalak sent the

1

Debtor a Notice of Default in the amount of $482.28, which represented delinquent payments for April and May 2008. At some point in the end of May or early June 2008, the Debtor paid $500.00, representing his April and May 2008 payments. Jonathan Mahalak issued a Substitute 1098 Statement for the tax year 2008 to the Debtor, showing those payments.

Incident to a proceeding commenced before the State of Michigan, Office of Financial and Insurance Regulation, in 2007, Royal's license as a mortgage broker, lender, and servicer was revoked. During the course of that proceeding, on August 1, 2008, Joseph Whall was appointed as receiver over Royal in a Wayne County Circuit Court lawsuit.

On September 7, 2012, Jonathan Mahalak executed an assignment of the mortgage (Don Warren notarized his signature) to Robert Vanderwoude ("Creditor"), which was recorded on May 29, 2013. On September 10, 2013, the Creditor sent a Notice of Default to the Debtor indicating that the mortgage was in default as a result of non-payment of monthly installments from May 2008 through September 13, 2013. The total arrearage listed on the Notice of Default was $30,910.73, which represented missed payments for the stated period in the amount of $241.14 each, plus late fees of $19.00 for each missed payment. On October 14, 2013, the Creditor sent a notice to the Debtor indicating that the property would be foreclosed and that the amount due to cure the default was $31,170.87. On November 15, 2013, the Creditor again sent a notice to the Debtor indicating that the property would be foreclosed.

On December 12, 2013, the Debtor filed his Chapter 13 bankruptcy petition. On his Schedule D, the Debtor listed an undisputed secured claim held by the Creditor in the amount of $9,000.00. On December 20, 2013, the Debtor filed his proposed Chapter 13 Plan, which proposes that the Creditor's secured claim on his residence be modified to provide that $9,906.30 will be paid over the 60 month life of the plan, in monthly payments of $198.13. No

arrearage is listed in the proposed Plan. It appears that the last date to file an objection to the plan was February 18, 2014. The Creditor did not file an objection to the Debtor's Chapter 13 Plan and its indicated treatment thereunder. The noted Plan provision treating the subject claim essentially mirrors the Debtor's position on and objections to the Creditor's filed claim. E.D.M. L.R. 3015-3 specifically provides for a time period within which to file objections to a plan, failing which, the creditor may be deemed to have consented to confirmation of the plan, and, in the case of a secured creditor, as here, also provides that the secured creditor may be deemed to have accepted the plan for purposes of its treatment in the plan. That in and of itself can be seen as disposing of the issues here (by way of the Creditor being bound by the Plan provision if the Plan is confirmed as proposed). This is particularly true given that the Court does not deem the separate filing of a claim at variance with its plan treatment to be tantamount to, or a substitute for, the required timely filed objection to the plan (and its differing treatment in the plan).

There are, however, additional facts and reasons separately calling for a similar result. On December 26, 2013, the Creditor filed a Proof of Claim in the amount of $34,740.22, consisting of principal of $16,037.42, pre-petition interest of $16,228.99, post-petition interest of $79.00, late fees of $1,311.72, and attorney fees and costs of $1,083.00. The Claim claims a pre-petition arrearage of $18,792.32, consisting of 68 monthly payments of $241.14, plus the indicated late fees of $1,311.72 and attorney fees and costs of $1,083.00.

On May 13, 2014, the Debtor filed an Objection to the Creditor's Claim, disputing the amount of the claim and alleging that (1) the Creditor failed to properly credit certain payments made by the Debtor; and (2) the assignments were in violation of various sections of RESPA, specifically 12 U.S.C. § 2605, which requires written notification of assignments of a federally related mortgage and notification of such by the servicer. On May 21, 2014, the Creditor filed a

3

Response to the Debtor's Objection. The Court held an initial hearing on the Debtor's Objection to Creditor's Claim on June 30, 2014, and on October 21, 2014, the Court held an evidentiary hearing.

At the October 21, 2014, evidentiary hearing, the only evidence consisted of mutually agreed upon exhibits and the testimony of the Debtor. The Debtor testified as follows:

(1) Starting in February 2008, he made approximately three monthly payments of $241.00, likely in February, March, and April of that year. Those payments were made in the form of money orders obtained from various convenient places by the Debtor and were paid to Jonathan Mahalak, who came to the Debtor's home to pick up them up.

(2) At various times during the months of February, March, April, and possibly May 2008, he made additional mortgage payments, which he brought to the office of Royal and personally handed to Donald Warren. Those additional payments included 2 or 3 payments made via cashier's checks for $1,500.00 each, 3 or 4 payments made via cashier's checks for $1,000.00 each. He made those additional payments because he wanted to establish a relationship with Don Warren and Royal in order to form the basis for obtaining additional loans, since he was initially seeking a larger loan. The funds for these additional payments apparently came from some lump sums paid to him incident to a buy-out from his employment at General Motors.

(3) He never received any monthly statements for the regular monthly payment amounts.

(4) In May of 2008, he went to the Royal office in order to make a payment. He met with Joseph Whall and was told by him that he had been appointed receiver over Royal. Joseph Whall advised him not to make any further payments and asked him to provide any evidence of payments he had previously made. He turned over all of the documentation he had relating to the payments he had made to Royal, including the cashier's check and money order stubs or copies. Mr. Whall never returned any of that documentation and did not make any further contact with the Debtor.

(5) Debtor made some cursory attempts to obtain records of the indicated cashier's checks and money orders from the various issuers, but he met some resistance and was not asked to make further inquiry.

(6) Sometime in 2012, the Debtor received a handwritten note from the Creditor asking the Debtor to get in touch with him. The Debtor attempted to contact the Creditor, but was unable to. The Debtor and Creditor had no further contact until sometime in 2013, when the Debtor received a foreclosure notice.

(7) Aside from the aforementioned handwritten note and the November 15, 2013 Notice of Foreclosure, the Debtor did not receive any communications from anyone regarding the

4

mortgage and payments on it between 2008 and 2013. The Debtor did not receive any notices of assignments of the mortgage after having apparently received the separate notice of assignment of servicing rights dated January 30, 2008 by Royal to Jonathan Mahalak.

At the conclusion of the evidentiary hearing, the court took the matter under advisement and requested that the parties file post-hearing briefs.

## JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 157(a) and E.D. Mich. LR 83.50. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## DISCUSSION

Section 502 of the Bankruptcy Code governs the allowance of claims in a bankruptcy case. Under § 502(a), a proof of claim that is filed under § 501 of the Bankruptcy Code is deemed allowed, unless a party in interest objects. Section 502(b) provides that if an objection to a claim is made, the court shall, after notice and a hearing, determine the amount of the claim, and shall allow such claim in such amount except to the extent that one of the grounds for disallowance of the claim under § 502(b)(1) through (9) apply.

Under Federal Rule of Bankruptcy Procedure 3001(f), a proof of claim executed and filed in accordance with the Federal Rules of Bankruptcy Procedure constitutes prima facie evidence of the validity and amount of the claim. The procedure for objecting to a proof of claim is set forth in Rule 3007(a), which provides that an objection to the allowance of a claim shall be in writing and filed and served at least 30 days prior to a hearing on the objection.

"During the claims allowance process, the burden of proof shifts between the parties. Initially, a creditor bears the burden of establishing its claim." *In re Hughes,* 313 B.R. 205, 208 (Bankr. E.D. Mich. 2004).

> If a party objects to the claim, the objecting party carries the burden of going forward with evidence to overcome the *prima facie* validity and amount of the claim. If the objecting party produces evidence to refute at least one of the allegations essential to the claim's legal sufficiency, the burden of persuasion shifts back to the claimant. The claimant ultimately bears the burden of proving the validity of the claim by a preponderance of the evidence.

*Hughes*, 313 B.R. at 208–09 (citations omitted) (criticism on other grounds noted in *Perron v. eCast Settlement Corp.* (*In re Perron* ), 350 B.R. 628 (Table), 2006 WL 2933827 at *3 n. 2 (6th Cir. BAP Oct. 13, 2006)).

At the evidentiary hearing, Debtor's counsel indicated that he was not taking any issue with the procedural contents of the Creditor's Proof of Claim, despite the fact that the Proof of Claim arguably did not meet some of the requirements set forth in Fed. R. Bankr. P. 3001.[1] If Debtor's counsel's statement is taken at face value, it would lead to the conclusion that the Proof of Claim is entitled to be prima facie evidence of the validity and the amount of the claim and that the Debtor has the burden of proof.

As noted, the only evidence at the evidentiary hearing consisted of mutually agreed upon exhibits and the testimony of the Debtor. The Court found the Debtor to be a credible witness.

The Debtor argues that the Creditor's Proof of Claim should be reduced to account for payments the Debtor made to Jonathan Mahalak and Don Warren. Despite the fact that he was somewhat unsure of the exact dates of the various payments he made, the Debtor did also provide more specific details regarding the dates of the payments he made in his post-hearing brief, stating that he made the following payments totaling $7,223.68:

---

[1] The Proof of Claim in this case arguably failed to meet the requirement set forth in Fed. R. Bankr. P. 3001(2)(A) and (C), which provide that "[i]f, in addition to its principal amount, a claim incudes interest, fees, expenses, or other charges incurred before the petition was filed, an itemized statement of the interest, fees, expenses, or charges shall be filed with the proof of claim" and "[i]f a security interest is claimed in property that is the debtor's principal residence, the attachment prescribed by the appropriate Official Form shall be filed with the proof of claim." The Proof of Claim, as filed, arguably fails to include the itemized statement of interest, fees, expenses, or charges and to include the attachment prescribed by the "appropriate Official Form."

6

| DATE | AMOUNT |
|---|---|
| 2/20/08 | $1,500.00 |
| 3/1/08 | $241.14 |
| 3/20/08 | $1,000.00 |
| 4/1/08 | $241.14 |
| 4/20/08 | $1,500.00 |
| 5/1/08 | $1,000.00 |
| 5/31/08 | $500.00 |
| 6/7/08 | $241.14 |
| 6/20/08 | $1,000.00 |

While the indicated more specific dates and details of the payments were set forth in the Debtor's post-hearing brief (rather than during the evidentiary hearing), the indicated amounts, rough dates, and facts and circumstances of how the payments were made were substantially testified to by the Debtor at the hearing, and they were consistent with that testimony, the Debtor's objections to the claim, and the treatment of the claim in the Plan proposed by the Debtor. Such confirmed the Court's conclusion arrived at based on the evidentiary hearing from the evidence adduced thereat, as to the facts of the payments and the amounts thereof, and, as such, provided an ample evidentiary basis for that conclusion, even absent the indicated post-hearing presented further detail. That conclusion is that the Debtor made the payments at the indicated times and amounts.

It is to be noted that more specific documents evidencing the payments were part of the documents not returned to the Debtor after he gave them to Joseph Whall, the receiver for

7

Royal.  As the Court finds that he did make those payments, the Court thereby concludes that the Debtor has met his initial burden and the ultimate burden of persuasion shifts back to the Creditor. The Creditor did not produce any evidence on the issue of payments received other than its Proof of Claim.  The Creditor ultimately bears the burden of proving the validity of the claim by a preponderance of the evidence.  The Court concludes that the Creditor has not met that burden and that the Creditor's claim should be reduced by the proper application of those payments.

As to how those payments should be applied, and the proper amount of the claim determined, the Debtor also objects to the Creditor's claim on the basis that the Creditor should be barred from claiming any interest or fees.  As noted, after closing and through June 2008, the Debtor was making payments.  Of the approximately nine payments made, all but three (which were in the amounts specified in the mortgage Note) were in much larger amounts, ranging from $500.00 to $1,500.00.  As to the latter, it is appropriate to conclude that such were meant as payments of, and to be applied to, principal.  The Creditor has presented no convincing evidence or argument that such should be otherwise construed.  Those latter payments total $6,500.00, and that last of such amounts were paid within four months of the initial loan payment date.  The original principal amount of the loan and note was $16,000.00.  It would therefore be appropriate to subtract the $6,500.00 from the $16,000.00, leaving a then principal balance due of some $9,500.00 as of June 2008.  As to the three payments of $241.14, and the question of how they are to be applied and the question of interest, there is no evidence as to how the recipients applied those payments between principal and interest.  Given their amounts and the Note interest rate of 18% per annum, it is evident that there could have been hardly any

8

13-62405-mlo    Doc 74    Filed 03/12/15    Entered 03/12/15 16:28:25    Page 8 of 10

principal reduction arising out of those three monthly payments.  So, one must conclude that interest would only accrue on $9,500.00 starting from June 2008.

When you add the following additional facts:

(a) The Debtor was told by the Joseph Whall, the receiver for Royal, that he should not make any further payments on the loan (and the Court believes given the recited facts, the timing of the assignments, and the relationships of the parties, that should be considered binding on the Creditor);

(b) Interest should not be accruing during a period when the Debtor had been reducing the principal of the loan by making large voluntary payments, and indeed, given his rationale for doing so, might have continued to do so absent the direction of Joseph Whall that he should not to make further payments on the loan;

(c) No party made any contact with the Debtor, sent any statement to the Debtor, or made any demand or attempt to collect on the debt between June 2008 and September 2013; and

(d) The Creditor failed to timely object to the proposed Plan that provided that this claim be treated as one in the amount of $9,906.30, payable at 5% in monthly estimated payments of $198.13, a plan treatment which essential validates and tracks the Debtor's objections to the Creditor's claim;

the required conclusion is that the Creditor should be barred from claiming the interest and fees included in its Proof of Claim.  Despite the fact that the ownership of the mortgage and/or servicing rights were transferred several times, it would be inappropriate for the Court to observe for purposes of the interest issue in this case the separateness of Royal, Mahalak Enterprises, Jonathan Mahalak, and Creditor, given that Jonathan Mahalak was acting on behalf of all of those parties and Don Warren was collecting payments on behalf of Royal even after the ownership and servicing rights had been transferred to Mahalak Enterprises.  No costs, expenses, or late fees should be allowed for reasons similar to the disallowance of interest.  Based on all of these facts, the Court concludes that the Creditor's claim should be reduced to $9,906.30, the amount stated in the Debtor's proposed Plan, which sufficiently accurately reflects the Court's indicated calculations and conclusions.

The Debtor also argues that assignments from Mahalak Enterprises to Jonathan Malalak and from Jonathan Mahalak to Creditor were made in violation of various sections of RESPA, specifically 12 U.S.C. § 2605(b) and (c), which require written notification of assignments of a federally related mortgage and notification of such by the servicer. The Court has already concluded that the interest and late fees should be barred on other grounds; therefore, the Court need not and will not address this argument.

## CONCLUSION

The Court concludes that the Debtor's Objection to the Creditor's Proof of Claim should be sustained and that the Creditor's claim should be reduced in accordance with this decision. Counsel for the Debtor shall prepare and present an appropriate order.

.

**Signed on March 12, 2015**

                                                              **/s/ Walter Shapero**
                                      **Walter Shapero**
                                      **United States Bankruptcy Judge**